ELLIOTT v. VAN BUREN.

# Richard Elliott v. Emma Van Buren.

*Assault and battery: Attempt to ravish: Quality of evidence: Reasonable doubt.* In an action for an assault and battery an averment in one count of an attempt to ravish does not change the nature of the action, nor affect the quality or weight of evidence required to make out a case; and a ruling that should preclude a verdict upon such a charge unless the jury were convinced beyond a reasonable doubt would be error; such a rule of evidence is not applicable to civil controversies.

*Amount of verdict: Weight of evidence: Questions for jury.* A court of review will not consider the amount of the verdict, or the weight of the evidence. The jury will be presumed to have done no legal wrong so long as they acted within their province, and their verdict will not be disturbed, unless the court has committed legal error.

*Damages: Assault: Aggravation of existing disease.* The aggravation of an existing disease or injury by an assault is as reasonable a ground of complaint, and as proper an element to be considered in estimating damages, as the creation of a new one.

*Evidence: Sickness: Suffering: Complaints: Declarations.* The declarations of a sick person made from time to time concerning present sufferings and sensations are admissible to prove the fact of such sufferings and sensations.

*Witnesses: Bodily ailments: Physicians: Best evidence.* Unskilled witnesses are not precluded from testifying to facts that came within their own observation relating to ordinary injuries or sickness of those with whom they have consorted, not involving medical knowledge beyond that of ordinary unprofessional persons, by any rule of evidence requiring such facts to be proved by physicians only, for the reason that theirs is the best evidence.

*Credibility of witnesses: Question for jury.* All considerations concerning the credit due to the witnesses respectively are for the jury only.

*Evidence: Ostensible purposes.* The exclusion of the evidence of the defendant's wife, offered to prove that she knew and approved of the professed purpose for which defendant left his own house to go to that of the plaintiff on the occasion when the grievance complained of is alleged to have occurred, is held not error under the circumstances of this case, there having been no evidence given before to which this would have been responsive, or which it would have tended to disprove.—GRAVES, CH. J., dissenting.

*Assault and battery: Attempt to ravish: Damages: Felonious design.* The gist of the action being the assault and battery simply, and the matters of aggravation affecting only the amount of damages, any shortcomings in the proof of the felonious design would not preclude a verdict for such damage as was made out to the satisfaction of the jury.

*Immaterial evidence: Charge to the jury.* Where immaterial evidence has been received without objection, instructions to the jury are not open to complaint on the ground that they precluded the jury from giving proper weight to such evidence, for it is not entitled to be given any weight.

*Evidence: Plaintiff's bad character: Credibility: Damages.* Allowing evidence of plaintiff's bad character to go to the jury in such an action, as bearing upon her credibility as well as upon the question of her consent

33 MICH.—7.

to defendant's acts, and also upon the damages, is giving it as wide a scope as the defendant is entitled to ask for it.

*Exemplary damages: Intentional assault.* An intentional assault, whether serious or trivial, must be regarded as willful, and would authorize such damages as in the sound judgment of the jury the character and extent of its atrocity would require; and where the evidence tends to show an indecent, if not a felonious assault, the case is a fit one for exemplary damages.

*Exemplary damages.* The question of the propriety of exemplary damages in cases of willful wrong is no longer an open one in this state.

*Charge to the jury.* Instructions to the jury which are not liable to mislead them as to their powers or duties, will not be reviewed in reference to their spirit or style, as bearing with severity against the party complaining of them.

*Heard October 22.     Decided November 2.*

Error to Ingham Circuit.

*Dart & Shields* and *D. Johnson,* for plaintiff in error, on the point that the testimony of physicians is to be regarded as the best evidence of bodily ailments, cited: *Rex v. Quinch,* 4 C. & P., 571; *Evans v. People,* 12 Mich., 27; *Johnson v. McKee,* 27 Mich., 471; 1 Greenleaf Ev., § 82; and as to the admission of declarations and complaints of sickness and suffering: *Page v. N. Y. Central R. R. Co.,* 6 Duer, 523; *Baker v. Griffin,* 10 Bosw., 140; *Enos v. Tuttle,* 3 Conn., 250; *Caldwell v. Murphy,* 11 N. Y., 416; 1 Greenleaf Ev., §§ 110, 111; as to the evidence of plaintiff's bad character: *People v. Abbott,* 19 Wend., 192; *Beebe v. Knapp,* 28 Mich., 67; *Rex v. Barker,* 3 C. & P., 589; *Hadden v. Shortridge,* 27 Mich., 213; and on the subject of exemplary damages: *Austin v. Wilson,* 4 Cush., 273; *Sinclair v. Tarbox,* 2 N. H., 135; *Taylor v. Carpenter,* 2 W. & M., 22; *Tabor v. Hustin,* 5 Ind., 322; *Nossman v. Ricket,* 18 Ind., 350; *Cook v. Ellis,* 6 Hill, 466; *Wilson v. Middleton,* 2 Cal., 54.

*H. B. Carpenter* and *M. V. Montgomery,* for defendant in error, on the subject of exemplary damages, cited: *Day v. Woodworth,* 13 How., 368; *Allison v. Chandler,* 11 Mich., 542; *Warren v. Cole,* 15 Mich., 265; *Detroit*

*Post v. McArthur, 16 Mich., 447 ; Kreiter v. Nichols, 28 Mich., 496 ; Elliott v. Herz, 29 Mich., 202 ; Welch v. Ware, 32 Mich., 77.*

CAMPBELL, J :

Emma Van Buren sued Richard Elliott for an assault and battery, one count of the declaration averring an attempt to ravish. The chief bodily damage shown on the trial consisted of bruises and injuries creating bodily weakness, and the aggravation of a malady accompanied with fits. The jury rendered a verdict of five thousand dollars. Errors are alleged upon various rulings during the trial, and in the charge to the jury.

The course of the argument renders it proper to refer briefly to some preliminary considerations.

This action is nothing more than trespass for an assault and battery. There is no such thing as a private action for a crime as such. The civil grievance here charged was an assault, described, as was proper, with its attendant circumstances of enormity, including an attempt to ravish. This, however, does not make it differ from an action for a lighter grievance, except as showing a heavier ground of complaint, for which, if made out, the damages allowed would be likely to be larger. The assault could be shown under either count, and if the whole circumstances of enormity were not made out, this would not defeat the action, but would only bear on the amount recovered. There is no rule of evidence which requires a greater preponderance of proof to authorize a verdict in one civil action than in another, by reason of the peculiar questions involved.— *Watkins v. Wallace, 19 Mich. R., 57.* The doctrine of this case has been adhered to in this state, and the court rightly refused to direct the jury that they could find no verdict upon the main charge, unless on proof of the nature and degree required on an indictment for an attempt to commit the crime of rape; that is to say, in other words, they must be convinced beyond

a reasonable doubt.    Indeed, if such a direction would have been proper at all, it would have been applicable to the whole case; for a common assault has always been indictable, and an attempt to commit a felony was only a misdemeanor at common law, and the rule of reasonable doubt is not confined to felonies.    No doubt a jury will always feel disposed to scrutinize an infamous charge more closely than a trifling one, and will not convict without being well satisfied, but there is no rule of law which adopts any sliding scale of belief in civil controversies.

We are also compelled to remark that it is not in the province of an appellate court to consider the amount of the verdict, or the weight of the evidence.    The court of trial may set aside a verdict which violates justice, and it is to that tribunal that parties must apply for relief against excessive damages, or any other of the wrongs for which it may be right to grant a new trial.    We are bound in all cases to assume that the jury have done no legal wrong when acting within their province.    If the court below has committed no legal error, we can only affirm the judgment.

The errors assigned, though numerous, are all capable of arrangement under a few heads.

The first group comprises objections to the reception of testimony tending to prove the continued results of the assault, in bodily weakness and malady, and the fact of plaintiff's suffering from fits.    The errors are supposed to consist in receiving irrelevant testimony, and in receiving testimony which was not in law the best quality of evidence.

Upon the first of these points the case is covered entirely by the decision in *Johnson v. McKee, 27 Mich. R., 471.* The sickness and other physical mischief caused by the assault constitutes of necessity a large part, and sometimes the worst part of the damage done.    The aggravation of an existing disease or injury is quite as reasonable a ground of complaint as the creation of a new one.    And the declarations of a sick person made from time to time concerning present sufferings and sensations (not being relations of past

occurrences) are the usual means of evidence where third persons testify on the subject. The opinion in that case covers the whole ground, and we need not enlarge upon it further.

It is claimed, however, that the testimony of persons who are not physicians should be excluded, on the ground that the law requires the best evidence, and theirs is not the best.

The term "best evidence" is confined to cases where the law has divided testimony into primary and secondary. And there are no degrees of evidence. except where some document or other instrument exists, the contents of which should be proved by an original rather than by other testimony, which is open to danger of inaccuracy. But where living witnesses are placed on the stand, one is in law on the same footing with another. If he can testify at all, he can testify in the presence as well as in the absence of those who may be supposed wiser or more reliable. There are some questions on which some witnesses cannot testify at all for want of knowledge. No one can be allowed to prove what he has never learned, whether it be ordinary or scientific facts. But one who can testify under any circumstances upon the facts on which he is examined, may do so as well where his superiors are to be found as where he knows as much as any other.

We think there is no rule which can prevent ordinary witnesses from describing what they see, or from testifying concerning the kind of injury or sickness of others whom they have had occasion to consort with, unless it is something out of the common course of general information and experience, or unless the question presented involves medical knowledge beyond that of ordinary unprofessional persons. It would be ridiculous to shut out testimony of what any juryman would understand well enough for all the exigencies of the case before him, simply because no physician has seen or examined the party. It would lead to a denial of justice in all cases of bodily injuries and sickness which did not occur within range of medical help, and which were not

regarded as so difficult of treatment as to demand it.    There
is no danger that the introduction of common testimony on
matters of common knowledge will do any more mischief,
when open to cross-examination before a court and jury,
than would arise from the want of any legal means of
selecting witnesses from the numerous class of professional
·men, who differ as much in their relative merits as many of
them do from laymen.    There is nothing in the record
before us which shows that any question arose on which it
was necessary to resort to the evidence of learned witnesses.
And all considerations concerning the credit due to the sev-
eral witnesses belonged to the jury.

It is also alleged as error, although not much pressed on
the argument, that the defendant's wife was not allowed to
testify as to her knowledge and approval of the purpose
with which defendant below left his own house to go to that
of Mrs. Van Buren on the occasion under review.    But it
must be manifest that if he actually made the assault com-
plained of, he could not have done so with any innocent
intention, whether he had in view the felonious purpose
charged or not.    The court charged the jury plainly that
he could not be convicted unless he began the attack him-
self.    He might have committed it on an intent conceived
at the time, or on one which was of longer duration.    A
considerable period elapsed before any thing occurred of
which complaint is made.    The only possible object for
introducing the testimony proposed must have been to con-
tradict and discredit the principal witness, or to corroborate
defendant, by showing that the defendant professed before-
hand that he had an innocent errand.    But no previous
declaration or intent could change the facts if he was guilty,
or could tend to show that he was not guilty.    He had been
sworn at length and did not profess that his wife suggested
his going to plaintiff's house, which was the special matter
proposed to be shown; and on this point she could not, if
she had so stated, have corroborated him.    The only proof
of malice brought against him was in the actual circum-

stances of the assault; and we can see no way in which the effect of these could be changed by his statements as to what had preceded them or by his previous purposes as professed. It would be quite easy for him to get up a false pretext or contrive a plausible errand to conceal his true purpose. And it would be very dangerous to allow a party to make testimony for himself in this way. There was no evidence to which this would have been responsive, and it did not tend to disprove any fact which had been sworn to. How far an inquiry might have been allowed into his doings at this time, if there had been testimony against him covering the same period, we are not called on to consider. There was nothing given tending in that direction, and we cannot discover the pertinence of the inquiry which was shut out.

The suggestion that the charge of the court would have allowed the jury to convict defendant even if acting in self defense is unfounded. The charge is very explicit to the contrary.

Neither can it be alleged as error that some of the charges left the jury to find a verdict, although they might not think Elliot had a felonious design. As stated in the outset, the offense charged was assault and battery, and all the matters in aggravation bore only on the amount of damages. A failure to prove them or any part of them would not have precluded the jury from giving a proper measure of damages for all that was made out.

It is also claimed that the court precluded the jury from allowing proper weight to certain testimony of bad character, both general and specific. So far as any of this testimony was immaterial,—and much of it is admitted to have been so,—we do not conceive that the court was bound to allow it any effect whatever. If the parties allowed it to be received from any views of policy, they ran the risk of its having some effect with the jury. But neither party could have any right to have the jury instructed to regard immaterial evidence for any purpose. When the court told the jury

this testimony as to character and conduct might be considered upon the question of consent as well as upon the damages, it covered the whole issue, for consent would have entirely negatived the assault. And allowing the specific and improper testimony to be considered as bearing on the credibility of the complaining witness, gave it, in such a case as this, just as wide a scope, inasmuch as the whole case depended on her credibility. Certainly no harm was done to the defendant below by such rulings.

The remaining questions, so far as they can be considered on the record, relate to damages. Some criticisms based on the omissions of the court to repeat in each of its rulings all the supposed elements necessary to authorize exemplary damages will be found without importance, from the nature of the action. There was no dispute but that plaintiff below received some blow or blows, or, what was equivalent, was pushed with more or less force by defendant. If this was done by him as the first assailant, he was unquestionably guilty of an assault. And as an assault cannot very well be purely accidental, and is not pretended to have been any thing but intentional if committed at all, it was such an act as must be regarded as willful, whether serious or trivial. Being so, it authorized the jury to give such damages as would, in their sound judgment, be required by the character and extent of its atrocity. If the jury believed that there was any assault at all, they could not help believing it was an indecent one, if not felonious, because there was no proof of any other.

We need not, therefore, consider any thing except the instructions given concerning what are called exemplary damages, as the case was fit for them if they are allowed at all.

The question of the propriety of their allowance is not an open one in this state. The argument that a person is thereby punished twice within the constitutional and common-law rules is, in our opinion, entirely fallacious. The maxim at common law, that no one shall be twice vexed for

the same cause, where it applied at all, prevented a second prosecution as well as a second punishment, and if it applied to civil damages would cover the whole, and not merely what is assumed to be a part of them. But there is no analogy between the civil and criminal remedies. The punishment by criminal prosecution is to redress the grievance of the public, while the civil remedy is for private redress. In the eye of the law, the injury where both actions lie, is a double injury, and one action has never, therefore, been allowed to be pleaded in abatement or bar of the other, simply because they are contentions between different parties.

But when we look at the rules which have been provided for enforcing the redress of either the public or the private complainant, we are not so much concerned with any supposable theories on which such rules may be based, as with the rules themselves. Civil actions never lie except for the vindication of broken laws, any more than criminal. It is a matter of arbitrary regulation, and not of principle, whether a given violation of law shall be redressed by a civil or criminal prosecution, or by both; and where new crimes are created out of what were before civil wrongs, the civil remedy has seldom been lessened or narrowed by reason of the new criminal prosecution. Whether we call the process punitory, or exemplary, or remedial, we get no nearer a conclusion, if the law has given the rule of procedure. And the controversy which has been so ably conducted on this head has not tended in any degree to change the legal result derived from the measure of damages in particular cases.

We have had occasion recently, in the case of *Welch v. Ware, 32 Mich.*, 77, as well as in previous cases there referred to, to consider the questions at issue here. The jury in all these cases have a very wide discretion. The court can only help them by calling their attention to the elements which may properly be considered, and the dangers to be avoided. On examining the present charges and

ELLIOTT *v.* VAN BUREN.

refusals, so far as they are excepted to, we find no material deviation from the rules and suggestions which have been repeatedly laid down on the subject, and therefore no error. It was hardly claimed on the argument that there had been any serious perversion of legal rules, if exemplary damages are recoverable at all.

But complaint is made of the spirit of the charge, as bearing with severity against the defendant.

We do not find that any thing was said which could in any way mislead the jury as to their powers or duties. This being so, we cannot be justified in acting as censors of the style or spirit of the charge, even if we should not approve them ourselves.    Judges are not expected to be so purely mechanical in their action as never to express in words more or less of their ideas upon many questions of legal policy and theory, as well as human conduct.    The reports are full of judicial remarks which are not supposed to be meant as legal rulings, and which an appellate court would never think of reviewing.    In *Sheahan v. Barry, 27 Mich. R., 217,* the remarks complained of bore much more severely against the defendant than any thing which appears in this record.    But on a review of the authorities we were there satisfied no ground of error existed, and so we think of the case before us.

The judgment must be affirmed, with costs.

MARSTON and COOLEY, JJ., concurred.

GRAVES, CH. J:

I concur with my brother Campbell except as to the exclusion of one item of evidence, which, as it seems to me, was in itself pertinent and applicable to one aspect of the main defense, and suited likewise to bear upon the assessment of damages.    Its credit and force were exclusively for the jury.    With those considerations we have nothing to do. Our duty is simply and barely to ascertain whether it was

competent and required to be submitted to the jury for their judgment. A brief explanation is all that is needed. *First*, It was competent for plaintiff in error to satisfy the jury, if he could, that his being at Mrs. Van Buren's house, on the occasion in question, was not precontrived, but casual, and that she took advantage of his so being there to improvise, contrive or pretend a state of things to give color or appearance of probability to this charge against him, which she resolved to make and thereafter made contrary to the truth. *Second*, Suppose it admitted that he was guilty of some act whilst there amounting to trespass against her person; it would still be competent for him to so explain the affair, if he could, by evidence to the jury as to relieve his conduct more or less of the degree of wrongfulness which would otherwise seem to characterize it. Now, whatever wrongful act, if any, was committed, the jury were entitled to have laid before them every circumstance susceptible of proof by legal means which might tend to fix the character of the act or lighten or deepen its enormity. Such evidence would go in aggravation or in mitigation. If any wrong in contemplation of law was done, its preconception and the contrivance of an occasion would naturally bring the jury to consider it in a light more atrocious, more grievous, and hence in a light calling for larger damages, than if it appeared to have been spontaneous or caused by a sudden giving way, though wrongly, to unexpected temptation and opportunity. Whether the act, then, was sedately and deliberately predetermined, or was a sudden act perpetrated without forethought, was a material question for the jury. The principle suggested is allowed in the criminal law to decide whether an act of willful killing amounts to murder or an offense of lower grade, and it appears to me that it well applies to a personal trespass of the kind complained of here, in so far as to allow the jury to consider evidence upon the point, with a view to the amount of damages. I think, therefore, the court should have allowed the offer to show, by the wife of plaintiff in error, that he went on her prompting and

ELLIOTT *v.* VAN BUREN.

request to Mrs. Van Buren's house on the occasion in question. It would, as it seems to me, have borne on the case in the two aspects of it which have been mentioned.