JOHN H. SHOULER v. BADA C. BONANDER ET AL.

*Equity—Mistake—Lost document—Evidence—Trust—Accounting— Reference to commissioner.*

<table>
<tr><td>80</td><td>531</td></tr>
<tr><td>f118</td><td>382</td></tr>
<tr><td>80</td><td>531</td></tr>
<tr><td>d126</td><td>137</td></tr>
</table>

1. Parties relying upon parol evidence to establish the contents of a written agreement claimed to be lost should be required to explain fully the circumstances of the loss or destruction of the paper, so as to relieve themselves from any reasonable suspicion of having connived at its loss, and to show its contents by proof that satisfies the mind as to its terms.

2. Where A. and B. purchased adjoining lots, and went into possession before receiving their deeds, which, when executed, by mistake conveyed the lot purchased by A. to B., and *vice versa*, and after the death of B. his heirs filed a bill to correct the mistake, and obtained a decree vesting the title of the lot *purchased* by B. in them, but making no provision for a transfer of the title

to the lot purchased by A. to the owner, the heirs will thereafter hold such title in trust for A. or those claiming under him.

3. A demand for the examination of witness in open court does not deprive the court of the right to direct an accounting before a commissioner in a proper case; citing *Stebbins v. Circuit Judge,* 27 Mich. 170.

4. This case presents the single question of the right of the complainant to redeem from a mortgage, or whether such right has been cut off by conveyances made by his grantor, and involves questions of fact purely; and the testimony is held to satisfy the Court that such right exists, and the decree below is affirmed.

Appeal from Delta. (Grant, J.) Argued April 24, 1890. Decided May 9, 1890.

Bill to redeem mortgaged premises, and to recover rents and profits. Defendants Catrina Becker and Eric E. and Ida K. Wickstrom appeal from a decree granting the relief prayed for. Decree affirmed. The facts are stated in the opinion.

*F. O. Clark,* for complainant.

*F. D. Mead* (*E. C. Chapin,* of counsel), for appellants.

CAHILL, J. The bill in this case was filed to redeem the west half of lot 9, block 56, in the village of Escanaba, from a mortgage executed by John Wickstrom to his brother, Israel Wickstrom, now deceased, and to recover from the heirs and personal representatives of the mortgagee in possession any balance of the rents and profits of the mortgaged premises in their hands after the payment of the mortgage debt. This mortgage was given in 1873 for $700.

The facts and circumstances upon which his right to redeem depend, if at all, are somewhat complicated. In 1872 John Wickstrom and Andrew Bonander, arriving together in this country from Sweden, and being unfa-

miliar with our language and customs, purchased two adjoining lots in Escanaba; Wickstrom lot 9, and Bonander, lot 10, of block 56. They each built upon their respective lots and went into possession before receiving their deeds. When the deeds came to be drawn, a mistake was made by the conveyancer, so that Bonander received a deed for Wickstrom's lot, and Wickstrom received a deed for Bonander's lot. This mistake was not discovered until sometime in 1875. In the meantime John Wickstrom had executed a mortgage to Israel Wickstrom for $700 on lot 10, intending and supposing that he was mortgaging lot 9, and in 1874 he executed another mortgage to some parties in Milwaukee for $436.70 upon lot 10, but supposing he was mortgaging lot 9. Soon after this second mortgage was executed, the mistake in the deeds was discovered, and negotiations were had between Bonander and John Wickstrom for its correction. Nothing definite ever came of these negotiations, because Bonander was unwilling to complete the transfer unless the two mortgages executed by John Wickstrom by mistake on lot 10 could be discharged, or transferred to lot 9.

In 1877 John Wickstrom removed to Chicago. Before doing so he executed a deed to Christian Oleson, a friend living in Escanaba, of lot 10. There was no consideration for this deed. It is claimed that the purpose of executing it was to enable Oleson to make the transfer of the title to Bonander, whenever the mortgages could be discharged. There was, at this time, on the west half of lot 9 a building, erected by John Wickstrom, and used by him as a saloon and boarding house. Before leaving for Chicago, John made some arrangement with Israel, his brother, in relation to the west half of lot 9 and the saloon and boarding house, the exact nature of which is in dispute. The defendant Catrina Becker,

who is the widow of Israel Wickstrom, claims that John executed a written agreement amounting to a transfer of the title, while the complainant, who claims through John Wickstrom, insists that the arrangement made at that time consisted of a sale of certain personal property, furniture, and fixtures, and the right to collect the rents during his absence, and apply them upon the mortgage which Israel held.

No written instrument was produced. It is claimed to have been lost or destroyed, and an attempt was made to prove its contents by several witnesses. The effort to prove such an agreement fails. Catrina Becker says she understood that the agreement was drawn up by Mr. E. P. Royce, an attorney at Escanaba, but Mr. Royce, when called as a witness, denies that he ever drew up such an agreement. The other witnesses who were called to prove its contents do not claim ever to have read the agreement, but say they could not read English at that time. They rely upon statements made to them by Israel Wickstrom in the presence of John Wickstrom as to what the paper contained. The parties all agree that a contract was drawn up between John and Israel just before John left for Chicago. Mr. Royce says that he prepared it, and that it was executed, but that it was a bill of sale of the furniture in the house, and that the land was not included. The testimony of the other witnesses does not satisfy us that the agreement executed included the land.

The proof of the loss of the instrument is also unsatisfactory. When parties rely upon parol evidence to establish the contents of a written agreement claimed to be lost, they should be required to explain fully the circumstances of the loss or destruction of the paper, so as to relieve themselves from any reasonable suspicion of having connived at its loss, and to show its contents by proof that satisfies the mind as to its terms.

"No vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily." *Tayloe v. Riggs*, 1 Pet. 600; *Richardson v. Robbins*, 124 Mass. 105.

In November, 1880, Israel Wickstrom died, and his widow, Catrina, was appointed administratrix of his estate August 11, 1881. She afterwards married Charles Becker. In October, 1881, John Wickstrom gave Catrina Wickstrom a quitclaim deed of the west half of lot 9, running to her as administratrix of the estate of Israel Wickstrom. It is claimed by defendant Catrina (now Becker) that this deed was given for the purpose of carrying into effect the written agreement made between John and Israel in 1877, just before John left for Chicago. The complainant claims that this deed was intended simply as a power of attorney to enable Catrina to collect the rents from the property, and as evidence of this reference is made to a letter written by Catrina to John, transmitting this deed to him to be executed, in which she refers to the instrument inclosed as a power of attorney.

It is conceded that from 1877 down to the commencement of this suit Israel Wickstrom, in his life-time, and his widow, since his death, have been in possession of the premises, and in receipt of the rents and profits derived therefrom. The mistakes in the deeds of Andrew Bonander and John Wickstrom remained uncorrected until 1887. In the mean time Andrew had died. In 1887 a bill was filed by Peter M. Peterson, as guardian of Anna and Bada C. Bonander, the minor children of Andrew Bonander, deceased, against Catrina Becker, the widow of Israel Wickstrom, her husband, Charles Becker, and the holders of the Milwaukee mortgage given by John Wickstrom, for the purpose of correcting the mistake in the deed of lot 10, praying for a decree that said lot 10

be decreed to be the property of the heirs of Andrew Bonander. Upon a hearing a decree was so made, and the title of the said lot 10 decreed to be in the heirs of Andrew Bonander free of the mortgages executed by John Wickstrom. No provision was made in this decree for putting the title of lot 9 in John Wickstrom or his grantees, but it is claimed that the effect of this decree must be to charge the heirs of Andrew Bonander as trustees of the title to lot 9, holding the same for the true owner. This is undoubtedly correct.

In February, 1875, complainant purchased of John Wickstrom the east half of lot 9 for $400. On February 15, 1887, he purchased from him all his remaining right, title, and interest in lot 9. The consideration for this last purchase was $1,500, $300 of which was paid down, and the balance was secured by mortgage on the property, payable when the title should be made good. Complainant also took an assignment from said John Wickstrom of all his right, title, and interest in the rents collected by Catrina and Charles Becker from the property over and above the amount necessary to pay the Israel Wickstrom mortgage. By virtue of these purchases, complainant claims that he is the absolute owner of lot 9; that he is entitled to an accounting from Catrina Becker as to the rents collected, and to have the title held in trust by the heirs of Andrew Bonander, deceased, conveyed to him, and also any title held by Catrina Becker.

The complainant's right to the decree prayed for depends altogether upon the effect that is to be given to the deed executed by John Wickstrom to Catrina Wickstrom in October, 1881. If, as is claimed by complainant, that deed was not intended to convey the title, but was intended simply to aid the grantee named in it to the collection of the rents, so that they might be applied

upon the mortgage which she held upon this property, then no title would pass by such deed. But if, on the other hand, as is claimed by Mrs. Becker, the deed given to her in 1881 was intended to convey the title, and was in pursuance of the arrangement made between her husband and John in 1877, then the complainant's bill cannot be sustained.

In support of these conflicting claims a mass of testimony has been taken on both sides, and our attention is called to various facts and circumstances tending to support each position. The circuit judge who tried the case found the facts to be substantially as claimed by complainant, and directed a decree to be entered in accordance with the prayer of the bill, viz:

1. That complainant was the owner of lot 9, block 56.

2. That the heirs of Andrew Bonander, deceased, held the legal title of said lot in trust for the complainant, and they were required to convey.

3. That the quitclaim deed of the west half of lot 9 from John Wickstrom to Catrina Wickstrom [now Becker] was a power of attorney to collect the rents from the buildings located on said lot, to be applied to the payment of the mortgage given by John Wickstrom to Israel, and that upon the full payment of said mortgage Catrina Becker execute a quitclaim deed of said land to the complainant, as purchaser of the rights of John Wickstrom.

4. That Catrina Becker was the wife of said Israel Wickstrom, and Eric E. Wickstrom and Ida K. Wickstrom were the only children and sole heirs of said Israel Wickstrom and Catrina Becker.

5. A special commissioner was appointed to take proofs as to the amount of rents collected by Israel Wickstrom in his life-time, or by Catrina Becker, their agents or attorneys, to apply upon the mortgage indebtedness of John Wickstrom to Israel, and to take an account of all moneys expended by Israel Wickstrom, his successors, heirs, or assigns, in the necessary repairs and improvements of the property, including taxes or insurance paid thereon, and to state such account, showing the net proceeds or balance now in the hands of Catrina Becker, as

successor and administratrix of the estate of Israel Wickstrom, deceased.

6. That, upon taking and completing the accounting, if there be anything found to be due to the estate of Israel Wickstrom, deceased, upon the note and mortgage given by said John Wickstrom to said Israel, the complainant should pay the balance thereon; and if it should appear on said accounting that more rents have been collected by Israel Wickstrom or by Catrina Becker, her servants, agents, or attorneys, or by the said Eric E. Wickstrom and Ida K. Wickstrom, as sole heirs, successors, and administratrix of the estate of said Israel Wickstrom, they shall pay such surplus to the complainant, with interest upon the same from the time of the receipt of such surplus.

From this decree the defendants Catrina Becker, Eric E. Wickstrom, and Ida K. Wickstrom appeal.

The single question presented upon the record is whether, under the circumstances, the complainant has the right to redeem from the mortgage given by John Wickstrom to his brother Israel in 1873, or whether the right to redeem has been cut off by any conveyance John Wickstrom has made, either to his brother or to his brother's widow. If the right to redeem be determined, then such right may be allowed upon the payment of the mortgage debt, with interest; and, in determining the amount of the mortgage debt, the amount received by the mortgagee for the rents and profits of the property mortgaged, less the amount expended for repairs, insurance, and taxes, must be considered and treated as payments.

We shall not attempt to review the evidence. It is not as clear and convincing as we could wish, but it satisfies us that the relation of mortgagor and mortgagee, which originally existed between John and Israel Wickstrom, has not been intentionally changed; that neither John Wickstrom nor Catrina Wickstrom supposed, when a deed was made in 1881, that John was parting with his interest in his property. His property was mortgaged,

and it was important to him to have the rents collected, and applied to the payment of this incumbrance. His ignorance of our language and customs might make him careless of the form of any instrument he might execute, if he understood the purpose of it to be to aid his brother's widow in the collection of the money which was her due. Neither do we think Catrina Wickstrom (now Becker) understood, when she obtained the quitclaim deed, that she was perfecting her title as owner, and giving up her interest as mortgagee, of this property. There are several circumstances that indicate a different understanding:

*First.* She caused the quitclaim deed to be prepared, and sent it to John to be executed. She knew him to be a married man, yet she did not include his wife as a party to it, as she would have been likely to do if she supposed she was thereby perfecting her title. In her letter transmitting the deed she called it a power of attorney, spoke of litigation she was having over the collection of rent, and urged him to send the deed back at once, so that she might have it for use on the trial of a cause which had been adjourned. She said nothing about her mortgage. This letter was written in the Swedish language. The deed was, of course, in English. It does not appear that John could read English at that time, but it is certain he would understand the letter better than the deed. Many other circumstances appear in the record tending to support complainant's claim. On the whole, it is satisfactorily established.

The decree below secures to the defendants the payment of the debt, together with all expenditures for repairs, taxes, or insurance, with interest. It requires them to credit on such indebtedness the money received by them for rent. If there is a balance their due, complainant is to pay it. If the balance is the other way,

defendants are to pay it to complainant. This is equitable if the complainant has the right to redeem.

The decree below very properly appointed a special commissioner to take the accounting, and report the same to the court. *Curtiss v. Sheldon,* 47 Mich. 262. A demand for the examination of witnesses in open court does not deprive the court of the right to direct an accounting before a commissioner in a proper case. *Stebbins v. Circuit Judge,* 27 Mich. 170.

The decree of the court below is affirmed, with costs.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred. GRANT, J., did not set.