## DAVIS v. TEACHOUT'S ESTATE.

1. CONTRACTS—DESTRUCTION OF WRITING—SECONDARY EVIDENCE.
   Where, in an action to enforce a claim against an estate, it became important for the claimant to prove the substance of a certain contract which had been destroyed by decedent in his lifetime, secondary evidence thereof was not rendered incompetent by the fact that the claimant was present when the contract was destroyed, and gave his consent thereto; it appearing that none of the parties at the time had reason to think its preservation necessary.

2. SAME—TERMS—MATERIALITY—INSTRUCTIONS.
   Claimant presented a claim against decedent's estate, based on the latter's agreement to pay him for the care of decedent's father; the claim as filed asserting that a pre-existing contract by decedent to support his father was carried out by the claimant. The contract referred to was destroyed in decedent's

lifetime. *Held,* that secondary evidence of the terms and consideration of the contract was properly admitted, as bearing on the probability of the new agreement's having been made as alleged, under instructions that the precise terms were immaterial, so long as it was shown that decedent was bound thereby to support his father for life.

3. SAME—AGREEMENT TO DEFER PAYMENT—CONSIDERATION.
   An agreement to defer the time of payment of an obligation until the obligor's death, upon the latter's promise to pay for the waiting, is based upon a valid consideration.

4. SAME—SUBSTITUTED AGREEMENT—LIMITATIONS.
   The statute of limitations does not begin to run against the substituted agreement until the obligor's death.

5. TRIAL—SPECIAL QUESTIONS—REFUSAL TO SUBMIT.
   It is not error to refuse to submit special questions the answer to which could not affect the result.

Error to Kent; Wolcott, J. Submitted December 6, 1900. Decided March 26, 1901.

Andrew L. Davis presented a claim against the estate of Miles G. Teachout, deceased, under a contract for the support of decedent's father. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for claimant, defendant brings error. Affirmed.

*W. D. Fuller,* for appellant.

*Frankhauser & Cornell* (*W. H. Haggerty,* of counsel), for appellee.

HOOKER, J. Claimant's wife and Miles G. Teachout were children of Jacob Teachout. The evidence tended to prove that Miles G. Teachout made a contract with his father many years ago to furnish him an adequate maintenance for life, and that afterwards, finding it inconvenient to have him in his family, he engaged the claimant to support him, promising to pay him well for doing so. This was about 1870. The claimant performed the service until 1876, when Jacob Teachout died, claimant hav-

ing supported him 283 weeks. Miles and the claimant then had an interview, in which Miles admitted his obligation to pay, but did not want to pay then. Miles told claimant that he had a good deal of property, and not an heir in the world, and that, if he would wait until the final disposition of his property; he would see that he was well paid, and well paid for waiting. Claimant consented to do so. Miles died in 1898, without having paid anything, and the claimant filed his claim in probate court for $1,438.65, including interest. The claim was disallowed by commissioners, but upon appeal a verdict was obtained for $1,557, and the defendant has brought the case here by writ of error.

It appeared upon the trial that the arrangement between Miles and his father was made in New York, and that it was in writing, and that Miles did support his father in his family for many years. These facts do not appear to have been disputed by any evidence. There was proof tending to show that the contract was burned, together with a lot of notes held by Jacob Teachout against his children, on an occasion when claimant was present, and with the assent of all parties; and it was contended that under such circumstances it was not competent to give secondary evidence of the contract. We think otherwise. Miles himself destroyed the instrument — if it was destroyed — at a time when none of the parties had reason to think it necessary to preserve it. If it was not destroyed, it was lost. There is no suspicion of fraud on the part of claimant in the matter, and the case should not be ruled by *Shouler* v. *Bonander*, 80 Mich. 531 (45 N. W. 487), cited by counsel.

"It is not a matter of course to allow secondary evidence of the contents of an instrument in suit upon proof of its destruction. If the destruction was the result of accident, or was without the agency or consent of the owner, such evidence is generally admissible. But, if the destruction was voluntarily and deliberately made by the owner, or with his assent, as in the present case, the admissibility of the evidence will depend upon the cause or

motive of the party in effecting or assenting to the destruction. The object of the rule of law which requires the production of the best evidence of which the facts sought to be established are susceptible is the prevention of fraud; for, if a party is in possession of this evidence, and withholds it, and seeks to substitute inferior evidence in its place, the presumption naturally arises that the better evidence is withheld for fraudulent purposes, which its production would expose and defeat. When it appears that this better evidence has been voluntarily and deliberately destroyed, the same presumption arises, and, unless met and overcome by a full explanation of the circumstances, it becomes conclusive of a fraudulent design, and all secondary or inferior evidence is rejected. If, however, the destruction was made upon an erroneous impression of its effect, under circumstances free from suspicion of intended fraud, the secondary evidence is admissible. The cause or motive of the destruction is, then, the controlling fact which must determine the admissibility of this evidence in such cases." *Bagley* v. *Mc-Mickle's Adm'rs*, 9 Cal. 430.

Considerable testimony was given concerning the terms and consideration of this original contract, but its materiality consisted only in its tendency to explain and render probable the theory of one or the other party in the case. Miles Teachout's obligation was an underlying fact, pertinent to the subject, but not necessary to the validity of a promise to pay Davis if he would support Jacob Teachout, though, under the theory of defendant's counsel, the claim as filed asserted that claimant carried out such original contract, and it was therefore necessary to prove such obligation. We look upon this as technical; but it is unimportant, for it was conclusively proved that Miles contracted to support his father. But it is not consistent with a claim that the contract was immaterial. Much of this testimony was of little importance to the real dispute; but it was explanatory, and counsel might well think it prudent to introduce it for the consideration of the jury. The court instructed the jury that the important question was whether the contracts were made between Miles and the claimant, and that, if they found such contracts were

made, the terms of the original contract were not very important, so long as it bound Miles to support his father for life.

It is clear that the case rested and turned upon an alleged agreement by Miles to pay at death, and added compensation for claimant's waiting.   This was a valid arrangement, and leaves no ground for the claim that the statute of limitations bars the obligation.   A new contract was substituted for the first one made between Miles and claimant, and as to that the statute has not yet run. Counsel strenuously urges that this was not a valid contract, and that there was no forbearance to sue, because there was no threat to sue.   It seems to us elementary that an agreement to defer the time of payment, upon a promise to pay for the waiting, is based upon a valid consideration.

Again, it is claimed that the contract to support Jacob Teachout was made by the claimant and his wife.   The only evidence tending to prove this was admissible only by way of impeachment, and, while it perhaps tended to discredit Mrs. Davis, it was not affirmative evidence of the fact.   The submission of special questions was properly refused.   It is not error to refuse to submit special questions upon immaterial, inconclusive, or admitted matters.   Nor is it when the answer cannot affect the result.

A few other questions have been reviewed, but we find no error in them.

The judgment is affirmed.

The other Justices concurred.