STEINBERG v FORD MOTOR COMPANY

1. EVIDENCE—PRODUCTS LIABILITY—LOST EVIDENCE—EXPERT TESTI-
   MONY—PHOTOGRAPHS—ADMISSIBILITY—APPEAL AND ERROR

   Direct evidence on the condition of an allegedly defectively in-
   stalled seat-belt bolt which had been examined by an expert
   witness for plaintiffs and photographed, but was then lost prior
   to trial should have been admitted in a products liability action
   where the trial court found that the bolt had not been lost
   intentionally, the proffered evidence was relevant, material and
   crucial to the plaintiffs' case, the defendant did not actively
   pursue his search for the bolt in question during pretrial
   discovery, the photographs, though showing but one side of the
   bolt, revealed the most important facet of the bolt's condition,
   and defendant would not have been precluded from presenting
   arguments suggesting possible alternative explanations of
   plaintiffs' evidence on the condition of the bolt.

2. EVIDENCE—DISTANCES—TESTIMONY—SPECULATIONS—MEASURE-
   MENTS.

   Speculation as to distances may not prevail as against testimony
   by one who has actually performed the measurements where
   measurements are crucial to a plaintiff's case.

3. EVIDENCE—BEST EVIDENCE RULE—DOCUMENTARY EVIDENCE—SEC-
   ONDARY EVIDENCE—LOST EVIDENCE.

   The best evidence rule is limited in its application to documen-
   tary evidence; where the best evidence rule applies, secondary
   evidence is admissible where there is proof that the original
   has been lost or destroyed.

4. WITNESSES—EXPERT WITNESSES—TRIAL—HYPOTHETICAL QUESTIONS
   —ASSUMED FACTS—RECORD FACTS.

   A hypothetical question is proper and an answer thereto is
   admissible if the hypothetical question assumes facts in evi-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 29 Am Jur 2d, Evidence §§ 451, 453–455, 485.
[2, 5] 8 Am Jur 2d, Automobiles and Highway Traffic § 893.
[4] 31 Am Jur 2d, Expert and Opinion Evidence § 53.

dence; such a question is proper unless the record is entirely barren of facts forming a basis for it.

5. COURTS—JUDGES—TRIAL—JUDICIAL NOTICE—BRAKE FAILURE—EXPERT TESTIMONY.

A ruling that there were insufficient facts on the record to support an expert's opinion that brake failure was caused by constant braking over a three-mile-long 400-foot incline at 50 miles per hour, where some facts were introduced on the subject, was improper, because the subject was for expert testimony, not for judicial notice.

Appeal from Wayne, Theodore R. Bohn, J. Submitted May 5, 1976, at Detroit. (Docket No. 23952.) Decided December 2, 1976. Leave to appeal applied for.

Complaint by Pearl Steinberg and Jules Steinberg and Auto Parts Warehouse, Inc., against Ford Motor Company seeking damages in a products liability case for injuries sustained when an automobile overturned. Judgment for defendant. Plaintiffs appeal. Reversed and remanded.

*Sol E. Goldberg,* for plaintiffs.

*Alexander, Buchanan & Seavitt,* for defendant.

Before: BRONSON, P. J., and D. E. HOLBROOK, JR., and D. F. WALSH, JJ.

BRONSON, P. J. Plaintiffs appeal from a jury verdict of no cause of action in their products liability case against defendant, Ford Motor Company. Plaintiffs had sought to recover for injuries sustained on July 6, 1965, when their five-week-old 1965 Lincoln sedan, which had been driven approximately 1,800 miles, went off a highway at a high rate of speed and overturned.

Testimony by the plaintiffs, Mr. and Mrs. Jules Steinberg, indicated that Mrs. Steinberg was driving the car along a divided highway in New York

State, traveling at approximately 50 miles per hour. As she reached the bottom of what had been a slight, but extended, incline, she transferred her foot from the brake pedal, which she had been using to keep the car within the speed limit on the way down the hill, to the accelerator, in order to propel the car up an approaching hill. The car immediately began to accelerate rapidly, even after Mrs. Steinberg took her foot off the accelerator pedal. Within a few seconds the car had attained a speed approaching 80 miles per hour. Mrs. Steinberg attempted to slow the car down by stepping on the brake, but met with no success. She lost control of the car, which went off the road and turned over twice before coming to a stop.

Mr. Steinberg, who was sitting in the passenger side of the front seat, was restrained by his seat belt and suffered relatively minor injuries. Mrs. Steinberg was not restrained by her seat belt, although she asserted that she had fastened it, and suffered more severe injuries.

Plaintiffs attempted to prove that the accident was a result of defects in the accelerator linkage and in the braking system of the automobile, and that Mrs. Steinberg's injuries were at least partially attributable to a failure of the seat belt.

The jury returned a verdict of no cause of action and plaintiffs now appeal, raising numerous issues concerning evidentiary rulings and jury instructions. Two are meritorious and require reversal.

Plaintiffs assert that they were improperly limited in their attempt to prove that Mrs. Steinberg's seat belt was defective. We agree.

Plaintiffs' theory as to the cause of the alleged failure of Mrs. Steinberg's seat belt was simple and direct. They claimed that the bolt which fastened the seat belt to the floor in the back seat of

the car had been improperly installed. They attempted to prove that the bolt had been cross-threaded upon assembly, with the result that it had only been screwed a few turns into the corresponding nut welded to the floor of the car and was therefore too weak to restrain plaintiff upon impact, instead pulling out of the nut.

In support of this theory, Mr. Steinberg testified that on the morning after the accident, he took a cab to the garage where the Lincoln had been towed. He stated that he found the seat belt on the driver's side of the front seat still buckled, but pulled through from the back seat. On the floor of the back seat, adjacent to the seat belt anchor nut, lay the anchor bolt and a washer.

Mr. Steinberg located a photographer, who took pictures of the loose bolt lying on the floor of the car next to the loose seat belt. These pictures were admitted into evidence.

Plaintiffs called John Harris, a Ph.D. in mechanical engineering, who testified as an expert witness. He stated that Mr. Steinberg had given him a bolt for examination and had identified the bolt as the seat belt anchor bolt which had given way. He testified that the bolt had been constructed with a small nylon insert protruding through a portion of the bolt threads. He stated that when this type of bolt, known as a Nylock bolt, was properly installed, the nylon plug would be cut by the threads on the nut, thereby holding the bolt in place by preventing it from vibrating out.

Dr. Harris began to state that the particular bolt he had been given by Mr. Steinberg had been defectively installed and to explain how he knew this when defense counsel objected, asking for production of the bolt. The objection was sustained.

Dr. Harris then testified that he had taken photomicrographs of the bolt in question and one which had been properly installed. He stated that after photographing the bolts, he stored them in a cabinet in his laboratory at East Fishkill, New York. Upon being transferred by his employer to Boulder, Colorado, he neglected to bring the bolts with him and had since been unable to locate them despite obtaining the help of former associates working in the East Fishkill laboratory.

Dr. Harris identified two pictures as being the photographs he had taken of the two bolts under discussion. He began to testify that the picture of the bolt which had been identified to him as being the loose seat belt anchor bolt, showed that the threads on that bolt had been started crookedly into the nut and that the nylon insert on that bolt had not been cut.

Defense counsel interrupted this testimony to voir dire the witness about the photographs. He ascertained that only the single picture of the defective bolt had been taken. The picture showed but one view of the bolt, from the side in which the nylon insert was visible. The witness admitted that there were no pictures available of the rest of the perimeter of the bolt. Defense counsel then objected to the introduction of the pictures into evidence on the basis that the pictures did not totally reproduce the evidence which had been lost.

After extensive argument, the trial court ruled that the photographs would not be admitted into evidence and that Dr. Harris would not be permitted to testify as to observations he made concerning the bolt. The articulated reasons for the ruling were that to permit such testimony or evidence would be extremely prejudicial to defendant, since

defendant would have no opportunity to inspect the allegedly defective bolt or a fair representation of all aspects of the bolt and would thus be unable to rebut the evidence or to effectively cross-examine plaintiffs' expert witness.

It should be noted that the trial judge stated at this time that he was certain that the bolt had not been lost intentionally. Subsequently, the trial judge denied a request by defense counsel for a jury instruction telling the jury that they could infer that evidence under the control of plaintiffs but not produced would have been adverse to plaintiffs. See Michigan Standard Jury Instruction 5.01. The instruction was denied because the court held that the plaintiffs had shown a reasonable excuse to explain their failure to produce the evidence in question.

As a result of the trial court's evidentiary ruling on this point, the jury was permitted to hear testimony concerning the theory of a Nylock bolt, including testimony that the nylon plug on such a bolt would not be grooved if the bolt had never been completely installed in a proper manner, but were not permitted to hear or consider any evidence as to the condition of the threads or nylon plug on the bolt which Mr. Steinberg allegedly found in the back seat of the Lincoln. They heard only the testimony of Mr. Steinberg that the bolt was found lying loose and testimony by defendant's expert witness that the metal plate attached to the end of the seat belt, containing a hole through which the anchor bolt had been inserted to fasten the end of the seat belt to the floor, showed signs of a circular mark indicating that the bolt had been tightened against the plate at some time.

One additional factor of some relevance which

appears on the record before us is that the seat belt bolts in question were never the subject of a pretrial discovery order. Although defendant Ford Motor Company did file a motion in 1968 to compel plaintiffs to produce certain parts of the automobile for inspection, including the seat belt bolts, that motion was subsequently dismissed for failure of defendant to appear on the date scheduled for hearing of the motion. We emphasize this point to make clear that we are not dealing with a discovery ruling or an issue concerning sanctions for failure to permit discovery.

The issue presented is simply whether the plaintiffs, having lost the original bolt, should thereby be precluded from introducing any evidence as to the condition of that bolt. We think not. The proffered evidence was relevant and material, crucial to plaintiffs' case, and there exists no rule of evidence precluding the admission either of Dr. Harris' testimony as to the condition of the bolt or the pictures of the bolt.

The argument presented by defendant on appeal in support of the trial court ruling on this evidence cites but a single case, *Schedlbauer v Chris-Craft Corp,* 381 Mich 217; 160 NW2d 889 (1968). In that case, the Supreme Court, in dicta, discussed the burden of a plaintiff in a products liability case as follows:

"In every action for negligence it is the duty of the plaintiff to prove by the most accurate evidence that is reasonably available to him the particular defect or act or omission which to him was the cause of the injury for which he would recover. * * * That is precisely true of evidence which is within his control. Here the plaintiffs have failed to produce the criticized fuel pump. They have failed to offer proof that it has been examined with deposed results."

The Court then noted that the evidence which had been produced at trial indicated that the fuel pump could have been obtained by the plaintiffs with little difficulty. They continued:

"The transcript, however, examined from end to end, fails to show any account or proffer of account for plaintiffs' seeming failure to proceed as above. Had defendant raised this question, either in its motions below or by request for instruction hinged upon that presumption which normally arises from the unexplained nonproduction of evidence within the control of a party bearing the burden of proof, the result here might have been different. Defendant did not raise the point, however, as counsel answered candidly in response to questioning from the bench. We accordingly leave it for some future case where it has been raised and saved, pointing for the present only to our general rule *(Perkins v. Township of Delaware,* 113 Mich 377, 379 [71 NW 643 (1897)], followed in *Brown v. Detroit United Railway,* 216 Mich 582, 585 [185 NW 707 (1921)] and *Baldinger v. Ann Arbor R. Co.,* 372 Mich 685, 691 [127 NW2d 837 (1964)]):

" 'It is the duty of the plaintiff who seeks to recover damages for negligence to place before the jury the actual conditions when it is within his power to do so.' " *Schedlbauer, supra,* 231–232.

It is apparent that the factual situation in *Schedlbauer* is in no way analogous to the instant case. In *Schedlbauer,* the plaintiffs had never examined the allegedly defective fuel pump after the accident, although it was available for such examination, and consequently were unable to produce any proof at trial based on such an examination. In addition, they had failed to offer any explanation for their failure to even inspect the fuel pump.

In contrast, the plaintiffs in the instant case obtained the allegedly defectively installed bolts, had them examined by an expert witness, and had

them photographed. They offered to introduce the results of that examination, as well as the photographs, into evidence. They offered an explanation for their inability to produce the bolts at trial, an explanation which, as noted previously, was fully accepted by the trial court. The evidence should have been admitted.

The concern of the Supreme Court in *Schedlbauer* was with the offer of speculative evidence when objective and real evidence was available but not produced. This is made clear by the cases upon which they rely, cases holding that where measurements are crucial to a plaintiff's case, speculation as to those distances may not prevail as against testimony by one who has actually performed the measurements. Similarly, in *Schedlbauer,* the Court could see no excuse for the plaintiffs having failed to examine the allegedly defective product and instead relying on speculation as to what might have occurred. Here, to the contrary, the bolts had been examined and evidence as to their condition was offered. The difference in the cases is between direct evidence of the condition of an allegedly defective product and speculation.

We decline to follow defendant's suggestion that we fashion some sort of a "best evidence" rule for products liability cases. The so-called best evidence rule, for very good reasons, has been limited in its application to documentary evidence. *Michigan Bankers' Association v Ocean Accident & Guarantee Corp, Ltd,* 274 Mich 470, 481; 264 NW 868 (1936), *Elliott v Van Buren,* 33 Mich 49, 53 (1875), 32A CJS, Evidence, § 782, pp 100–101. We do note, however, that even where the "best evidence rule" applies, secondary evidence is admissible upon proof that the original has been lost or destroyed,

at least in the absence of fraud. *Genovese v Genovese,* 5 Mich App 431; 146 NW2d 834 (1966), *Davis v Teachout's Estate,* 126 Mich 135; 85 NW 475 (1901). There has been no suggestion of fraud or intentional loss or destruction of the bolts in this case, and the trial judge himself explicitly stated that he believed the loss to have been inadvertent.

We do not think that to admit this evidence would have unduly prejudiced defendant. The expert who examined the bolt was subject to cross-examination. The photographs, though showing but one side of the bolt, revealed what appears to have been the most important facet of the bolt's condition, that the nylon insert had not been cut by the nut threads. Defendant could have offered evidence or presented arguments suggesting possible alternative explanations of plaintiffs' evidence on the condition of the bolt. The loss of the bolt could have been considered by the jury as affecting the weight of plaintiffs' evidence. Plaintiffs retained the burden of proving a defect in the assembly of the seat belt and that the defect caused injury to plaintiffs. We think that the jury should have been permitted to determine whether plaintiffs had done so.

Plaintiffs further assert that the trial court improperly limited the testimony of their expert witness as to possible defects in the braking system of the Lincoln. Again we are constrained to agree.

It appears from the record that plaintiffs' attorney attempted to elicit Dr. Harris' opinion as to why the brakes did not slow the car, based on Mr. Steinberg's testimony as to how the accident occurred. It appears that the witness would have testified, if permitted, that if Mrs. Steinberg had been

braking the car continually as she went down the three-mile-long hill immediately prior to the accident, that the brakes would have heated up, possibly to the point of vaporizing the brake fluid. He would have testified that the brakes, if functioning properly, should have slowed the car even if the throttle had been stuck in an open position, and that Mr. Steinberg's testimony that the brakes did not slow the car indicated that such a failure in fact occurred.

The trial court, upon objection by defense counsel, refused to permit this testimony on the basis that there had been no evidence presented as of that time that Mrs. Steinberg had been "riding the brakes" prior to the accident. Plaintiffs' attorney made an offer of proof based on the deposition testimony of Mrs. Steinberg, which was subsequently admitted pursuant to GCR 1963, 315.7, in which she stated that she had "kept braking" as she went down the hill preceding the scene of the accident. He also offered evidence that the hill in question consisted of a 400-foot drop in elevation over a three-mile-long stretch of road.

The trial court ruled that this evidence did not constitute evidence of "riding the brakes" which would permit Dr. Harris to express an opinion that brake failure could have been a result of such a riding of the brakes.

This ruling was clearly erroneous. A hypothetical question is proper and an answer thereto is admissible if the hypothetical question assumes facts in evidence. *Durbin v K-K-M Corp,* 54 Mich App 38, 54–55; 220 NW2d 110 (1974). Such a question is proper unless the record is "entirely barren of facts forming a basis for the hypothetical question". *Federoff v Meyer Weingarden & Sons, Inc,* 60 Mich App 382, 387; 231 NW2d 417 (1975).

We think the trial court erred in ruling that there were no facts in the record to support Dr. Harris' proffered opinion. The court in effect ruled that as a matter of fact and law, evidence showing that Mrs. Steinberg drove down an incline of 400 feet for three miles, at 50 miles per hour, and with her foot on the brake at all times, could not have caused brake failure. Clearly this was a subject for the expert's testimony, not for judicial notice. The record was not "entirely barren" of facts upon which the plaintiffs' hypothetical question was premised, and the trial court thus erred in refusing to permit plaintiffs' expert to offer an opinion as to the cause of the brake failure.

These two evidentiary rulings by the trial court were extremely prejudicial to the plaintiffs' case, leaving the plaintiffs unable to prove a cause for the failure of the seat belt bolts to hold and forcing plaintiffs to abandon any claim of a defect in the brakes. Plaintiffs are entitled to a new trial.

We need not discuss the remaining 15 allegations of error raised by plaintiffs on this appeal. We do not foresee that they will cause problems on retrial.

Reversed. Costs to plaintiffs.