*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0138p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

THOMAS A. LINDSAY,
              *Plaintiff-Appellant,*

              *v.*

COVENANT MANAGEMENT GROUP, LLC,
              *Defendant-Appellee.*

No. 07-1725

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-10648—Anna Diggs Taylor, District Judge.

Submitted: March 6, 2009

Decided and Filed: April 7, 2009

Before: SILER, COOK, and McKEAGUE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Donald H. Robertson, WINEGARDEN, HALEY, LINDHOLM & ROBERTSON, Grand Blanc, Michigan, for Appellant. Steven W. Moulton, COOLEY, MOULTON & SMITH, Flint, Michigan, for Appellee.

———————————

**OPINION**

———————————

COOK, Circuit Judge. Thomas A. Lindsay appeals the district court's order affirming the bankruptcy court's decision to allow Covenant Bankcorp, Inc. ("Covenant")'s claim against him. Lindsay objects to Covenant's claim on the grounds that (1) Covenant impermissibly charged interest on the discount fee Lindsay paid at the inception of the loan, and (2) Covenant failed to apply to principal reduction the extension fee Lindsay paid. For the reasons that follow, we affirm.

1

I.

Two different loan transactions underlie Lindsay's appeal. In the first, Lindsay sought funding from Covenant to finance his purchase of a bowling alley in Lapeer, Michigan. The loan instruments germane to that transaction include the Promissory Note and the Buyer's Closing Statement, both attached as exhibits to the parties' factual stipulation. The Note reflects Lindsay's promise to pay "the sum of $1,350,000 (Principal) plus interest . . . at the rate of 11% per annum (Contract Rate)," and the Closing Statement shows that the $1,350,000 loaned included $270,000 as a discount fee.

The second transaction occurred several years later, when Lindsay sought to extend the Note payment term for six months. Covenant charged a $36,765.86 extension fee—reflected in a Note Modification Agreement—which Lindsay paid with funds borrowed from a different lender, BNC Mortgage Company ("BNC").

Unable to satisfy his debt at the end of the extension period, Lindsay sought protection under Chapter 11 of the Bankruptcy Code. Covenant, as a secured creditor, filed a Proof of Claim for $1,340,321—the outstanding balance due on the Note. Lindsay responded with an Objection to the Claim. The bankruptcy court overruled Lindsay's Objection, and Lindsay appealed the court's order to the district court. The district court affirmed, and Lindsay now appeals.

II.

We "directly review[] the bankruptcy decision, not the district court's review of the bankruptcy court's decision"—de novo for legal conclusions, and clear—error review for factual findings. *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 130 (6th Cir. 1995).

A.

Lindsay quarrels with the amount Covenant claims he owes. According to Lindsay, the 11% interest charged on the $270,000 discount fee throughout the loan term "violates Michigan law because the discount fee is itself interest, and Michigan law does not permit the compounding of interest unless authorized by statute." The bankruptcy court overruled that objection after finding that Lindsay not only agreed to pay the $270,000 discount fee, but also to finance the fee along with the remainder of the loan and to pay interest on the

entire balance.  The court further noted that Lindsay bore the burden of overcoming the presumption of validity accorded a properly filed Proof of Claim, *see In re Dow Corning Corp.*, 250 B.R. 298, 321 (Bankr. E.D. Mich. 2000), and observed that "there's no argument in this case that the interest rate is usurious."

We agree with the bankruptcy court's decision to rule against Lindsay on his interest-based objection.  Courts, wherever possible, interpret an agreement "in such manner as to carry out the intent of the parties."  *Loyal Order of Moose, Adrian Lodge 1034 v. Faulhaber*, 41 N.W.2d 535, 538 (Mich. 1950); *see also Minthorn v. Haines*, 134 N.W. 1113, 1114 (Mich. 1912) ("It is a familiar rule of construction that contracts shall be so interpreted as to make them valid, rather than illegal.").  Lindsay does not dispute that he agreed to pay interest on the discount fee.  Rather, he insists that—notwithstanding the plain meaning of the contract—the discount fee was an interest charge, and urges us to invalidate applying the 11% interest rate to the fee in the absence of a Michigan statute authorizing it.  Covenant takes the opposite tack, asking us to uphold the structuring of this transaction in the absence of statutory authority forbidding it.

In arguing that the discount fee is itself interest, Lindsay points only to cases examining claims of usury, *see, e.g.*, *Leach v. Dolese*, 153 N.W. 47, 49 (Mich. 1915).  We view those cases as inapposite, not only because Lindsay's brief explicitly disavows reliance on a usury theory, but also because usury arguments lack applicability here inasmuch as Lindsay specifically agreed to pay interest on the discount fee by signing the Note.  *See* Mich. Comp. Laws § 438.31c(11) ("The parties to a note, bond, or other indebtedness of $100,000.00 or more, the bona fide primary security for which is a lien against real property other than a single family residence . . . may agree in writing for the payment of any rate of interest.").  Lindsay's cited cases simply confirm the typical aim of courts confronted with usury—"to protect the necessitous borrower from extortion."  *Wilcox v. Moore*, 93 N.W.2d 288, 291 (Mich. 1958).  They do not pertain to sophisticated borrowers taking out million-dollar business loans.  Like the bankruptcy court, we find that Lindsay cannot overcome the presumptive validity of Covenant's Proof of Claim.

B.

As for his second objection, Lindsay argues that Michigan law requires Covenant to apply the $36,765.86 extension fee he paid to principal reduction, relying on *Bateman v. Blake*, 45 N.W. 831 (Mich. 1890).  But *Bateman* does not help Lindsay because those defendants appear never to have agreed to treat their monthly payments as extension fees rather than principal reductions, as  Lindsay did.  *See id.* at 832.  The *Bateman* court concluded after noting the defendants' extreme poverty, that the trial judge "rightly refused to treat the monthly payments . . . as anything else than payments on the principal debt." *Id.* Courts interpreting *Bateman* characterize it as involving usury.  *See, e.g.*, *Gladwin State Bank v. Dow*, 180 N.W. 601, 607 (Mich. 1920).  Contrast Lindsay, whose Note Modification Agreement plainly listed the fee as consideration for Covenant's six-month forbearance.  *See Davis v. Teachout's Estate*, 85 N.W. 475, 476 (Mich. 1901) ("It seems to us elementary that an agreement to defer the time of payment upon a promise to pay for the waiting is based upon a valid consideration.").  And in exchange for Lindsay's fee, Covenant agreed not only to extend the deadline for payment, but also to discharge and re-record its mortgage on Lindsay's residence, subordinating it to Lindsay's mortgage with BNC.  Because Lindsay fails to demonstrate that Covenant's booking of the extension was illegal or a breach of contract, we conclude that the bankruptcy court properly upheld Covenant's claim.

III.

We affirm the district court's judgment upholding the bankruptcy court's order.